## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

JOHN B. TERRELL                                                PETITIONER

v.                                          CIVIL ACTION NO. 3:08cv244-TSL-MTP

RONALD KING                                                   RESPONDENT

### REPORT AND RECOMMENDATIONS

This matter is before the Court on the *pro se* petition of John B. Terrell for a writ of
habeas corpus under 28 U.S.C. § 2254.  Having considered the petition and other submissions,
the [8] answer, the record of the state court proceedings and the applicable law, the undersigned
is of the opinion that the petitioner's request for relief pursuant to 28 U.S.C. § 2254 should be
denied.

### PROCEDURAL HISTORY

Following a jury trial, petitioner was convicted of two counts of statutory rape under
Miss. Code Ann. § 97-3-65(1)(b) in the Circuit Court of Hinds County, Mississippi.[1]  By orders
filed June 20, 2005, petitioner was sentenced to a term of thirty (30) years for each count, with
the two sentences to run concurrently.  (Briefs and Other Pleadings volume).

---

[1]The facts of this case are set forth more fully in the Court of Appeals's opinion denying
petitioner's direct appeal.  *See Terrell v. State*, 952 So. 2d 998 (Miss. Ct. App. 2006) (Exh. A to
Answer).  To briefly summarize, petitioner made available an abandoned house in Utica,
Mississippi to an adult female acquaintance and her children, including a minor daughter, after
the woman moved out of her boyfriend's house.  Petitioner had sex with the minor daughter on
several occasions in 2002 and 2003 at a time when she was ten or eleven years old (her date of
birth is December 14, 1991).  After his arrest, petitioner gave a written statement to Latasha
Holmes, an investigator with the Juvenile Services Division of the Hinds County Sheriff's
Office.  In the statement, petitioner claimed that he did not know he had sex with the minor at the
time because her mother drugged him; however, he also stated that he was then aware he had sex
with the minor on more than one occasion.  Petitioner disputed this at trial.

Thereafter, following denial of his motion for a judgment notwithstanding the verdict or, in the alternative, motion for a new trial, petitioner directly appealed his judgment of conviction to the Mississippi Court of Appeals, asserting the following issues (as stated by appellate counsel)[2]:

1.  The jury verdict on both counts was contrary to the overwhelming weight of the evidence;

2.  The lower court erred by not granting the motion for a directed verdict at the conclusion of the State's case, a preemptory [sic] instruction, and for not granting the motion for a new trial or in the alternative a JNOV;

3.  The court erred in granting the State's motion to exclude evidence and witnesses as a discovery violations [sic];

4.  The court erred in overruling the defense motion to exclude witness Latasha Holmes as a discovery violation;

5.  The judgment and sentence of the lower court should be set aside due to ineffective assistance of counsel.

(Briefs and Other Pleadings; Brief of Appellant at p. 3).

Petitioner's conviction and sentence were affirmed by the Court of Appeals in a written opinion dated November 7, 2006, *reh'g denied* (March 27, 2007).  Petitioner did not request a writ of certiorari to the Mississippi Supreme Court.[3]

Petitioner then filed a petition for post-conviction relief and an application for leave to file a motion for post-conviction relief in the trial court with the Mississippi Supreme Court,

---

[2]Appellate counsel was not the same as trial counsel.

[3]Under Mississippi statute, the Supreme Court may assign any appeal to the Court of Appeals, subject to certain exceptions not applicable here.  *See* Miss. Code Ann. § 9-4-3.  Decisions of the Court of Appeals are final and not reviewable by the Supreme Court except on a writ of certiorari, the granting of which is discretionary.  *Id.*

raising the following grounds (as stated by petitioner):

     1.  Improper indictment;

     2.  Ineffective assistance of counsel;

     3.  Confront witnesses;

     4.  Due process;

     5.  Trial by jury.

(Miscellaneous Pleadings volume).

     The Mississippi Supreme Court denied petitioner's application and petition on November 14, 2007:

> The panel finds that [petitioner's] claims of ineffective assistance of counsel do not meet the standard set out in *Strickland v. Washington* and that those claims are without merit. The panel further finds that every other issue raised in the petition either was raised at trial or on appeal or was capable of being raised in the previous proceedings.  Those claims are therefore procedurally barred.  Miss. Code Ann. § 99-39-21. Notwithstanding the procedural bar, the panel finds that those claims are without merit.

(Exh. B to [8] Answer).[4]

     Petitioner filed his petition for writ of habeas corpus [1] ("Petition") in this Court on or about April 14, 2008.  The grounds asserted by petitioner are as follows (as summarized by respondent in its [8] Answer, which summary is set forth verbatim):

**Ground One**: Improper Indictment.  Petitioner's indictment is improper and insufficient

---

     [4]The citation for *Strickland v. Washington* is 466 U.S. 668 (1984).  Miss. Code Ann. § 99-39-21 reads, in pertinent part: "Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver."

by not having "true bill" listed.

**Ground Two:** Ineffective Assistance of Counsel.  Failure of defense counsel to:

1. Request an accomplice/co-defendant testimony cautionary instruction;
2. Object to the introduction of petitioner's statement or file and argue a motion to suppress same;
3. Object to the hearsay testimony of Patricia Bailey when the child witness was available and actually did testify;
4. Object to the prejudicial vaginal photographs;
5. Object to the testimony of criminal activity of the petitioner other than that charged in the indictment;
6. Subpoena or call as a witness Cardell McClendon;
7. Call as a witness Lula Terrell;
8. Provide timely reciprocal discovery which failure resulted in the exclusion of valuable exculpatory evidence;
9. Argue the *Box* guidelines or request a continuance during motion in limine;
10. Properly cross examine Leon Seals, and by doing so opened the door for hearsay testimony which excluded Cardell McClendon as a suspect.

**Ground Three:** Confront Witnesses.

The rulings of the lower court excluding witnesses and the audio recording, allowing the testimony of Latasha Holmes, and allowing "hearsay" through the testimony of Leon Seals and Patricia Bailey (regardless of defense objection) and on the issues of discovery violation was an abuse of the court's discretion and a violation of the appellant's constitutional rights to adequately confront witnesses against the appellant as guaranteed by the U.S. Const. Amendments 6 and 14, and Article 3, Section 26 of Mississippi, 1890.

**Ground Four:** Due Process.

The trial court's rulings denied the appellant his constitutional guarantees to due process, fair trial, and to call witnesses on his behalf, which is a violation of the appellant's 5th Amendment.

**Ground Five**: Trial by Jury.

1. In appellant's case the verdict of the jury was contrary to the law and against the overwhelming weight of the evidence which is a violation of the appellant's 6th Amendment.
2. Petitioner is by all means "innocent" of the charges and/or crime (statutory rape) for this said cause, and would have been found not

guilty, if the lower court would have legally corrected the errors and violations of the state (respondent) and defense attorney.

## THE STANDARD OF REVIEW

As the petition was filed after the effective date of The Antiterrorism and Effective Death Penalty Act ("AEDPA"), the AEDPA and case law interpreting it provide the standards under which the petition must be evaluated.  *See Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003).  As an initial matter, exhaustion of state remedies is a mandatory prerequisite to federal habeas relief under 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B)(i) there is an absence of available State corrective process; or
>>  (ii) circumstances exist that render such process ineffective to protect the rights         of the applicant.
>
> . . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

To satisfy the exhaustion requirement, the petitioner must first present his claims to the highest state court in a procedurally proper manner so that it is given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).  This is so because state courts, "like federal courts, are obliged to enforce federal law."  *Id.* at 844.  Thus, "when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *Id.* (citations omitted).  Exhaustion results from the petitioner's pursuit of his claims

5

through state courts either by direct appeal or by post-conviction proceedings.  *See Orman v. Cain*, 228 F.3d 616, 619-20 & n.6 (5th Cir. 2000).

Along with a determination of whether the petitioner has exhausted state court remedies, this Court must also determine whether the state court has decided the asserted claim on the merits, thus barring habeas relief except under very limited circumstances.  AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts review pure questions of law, as well as mixed questions of law and fact, under subsection (d)(1).  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000); *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).  The "unreasonable application" inquiry is based on an objective standard, and for purposes of the (d)(1) analysis, "unreasonable" does not equate with "incorrect."  *Garcia v. Dretke,* 388 F.3d 496, 500 (5th Cir. 2004) (citation omitted).  Rather, the application of clearly-established precedent must be both incorrect *and* unreasonable for federal habeas relief to be warranted.  *Id.*

Pure questions of fact are reviewed under subsection (d)(2).  *Corwin,* 150 F.3d at 471.  Determination of a factual issue made by a state court is entitled to a presumption of correctness which the petitioner has the burden of rebutting by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  *See also Schriro v. Landrigan,* 550 U.S. 465, 473-74 (2007).

It is against this backdrop that petitioner's claims must be reviewed–with the added caveat that a federal court does not "sit as a 'super' state supreme court" and may decide the issues presented by the habeas petition "only to the extent that federal constitutional issues are implicated . . . ". *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986); *see also Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). "It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83-84 (1983) (citations omitted). Thus, AEDPA provides that the court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). "A state's interpretation of its own laws or rules is no basis for federal habeas corpus relief since no constitutional question is involved." *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981) (citations omitted).

## ANALYSIS

### Ground One–Improper and insufficient indictment by not having "true bill" listed

The sufficiency of a state indictment is not a matter of federal habeas corpus relief unless it can be shown that the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell*, 339 F.3d 308, 313-14 (5th Cir. 2003), *cert. denied*, 543 U.S. 1056 (2005); *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994) (citation omitted). Moreover, "[w]here the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." *Id.*; *see also Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

"State law dictates whether a state indictment is sufficient to confer a court with

jurisdiction." *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). The purpose of an

indictment is to "fully notify the defendant of the nature and cause of the accusation."

Mississippi Uniform Rules of Circuit & County Court ("URCCC") 7.06; *see also Starns v. State*,

867 So. 2d 227, 232 (Miss. 2003) (citing U.S. Const. Amend. V; Miss. Const. art. 3, § 26).

URCC 7.06 also provides that "[f]ormal and technical words are not necessary in an indictment,

if the offense can be substantially described without them."

Contrary to petitioner's assertions, the instant indictment contains the essential elements

of the separate criminal acts charged under Miss. Code Ann. § 97-3-65(1)(b), and also contains

the elements required to be included by URCC 7.06.[5] This Court agrees with the conclusion in

*Roach v. Jenkins*, 2009 WL 3711549 (S.D. Miss. 2009), *adopting* Report and Recommendation,

that "there is no basis in Mississippi law for concluding that the indictment was insufficient to

confer jurisdiction on the state court [because the indictment did not contain the phrase 'a true

bill']. No relief is warranted on this claim." *Id.* at *8 (Report and Recommendation).

Therefore, this ground is without merit.

**Ground Two–Ineffective assistance of counsel**

Petitioner claims that he received ineffective assistance of counsel for a variety of

---

[5]1. The name of the accused; 2. The date on which the indictment was filed in court; 3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi; 4. The county and judicial district in which the indictment is brought; 5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient; 6. The signature of the foreman of the grand jury issuing it; and 7. The words "against the peace and dignity of the state." For a copy of the indictment, *see, e.g.*, Briefs and Other Pleadings, Record Excerpts at p. 5.

reasons.[6]  Each of these claims will be addressed separately below.

It was in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), that the United States Supreme Court defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding is to be measured: petitioner must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense."  In order to establish deficiency, petitioner must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id*.  "To meet the prejudice prong of the *Strickland* test the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citation omitted).  Further, petitioner must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also show that "'the result of the proceeding was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

This Court's "scrutiny of counsel's performance must be highly deferential" and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .". *Strickland*, 466 U.S. at 689; *see also Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998) (observing that the Fifth Circuit "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment") (internal quotations and citations omitted).

As a final point,

---

[6]All claims are made against trial counsel.  The performance of appellate counsel is not at issue.  Indeed, the claims of ineffective assistance of counsel raised in the instant petition mirror those asserted on appeal.  Briefs and Other Pleadings volume, Brief of Appellant at pp. 17-28.

[i]t bears repeating that the test for federal habeas purposes is *not* whether [the petitioner made the showing required under *Strickland*]. Instead, the test is whether the state court's decision–that [the petitioner] did *not* make the *Strickland*-showing–was contrary to, or an unreasonable application of , the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim.

*Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004), *cert. denied*, 541 U.S. 1087 (2004)

(emphasis and brackets in original).[7]

(1) Counsel failed to request an accomplice/co-defendant testimony cautionary instruction

This claim is based on the fact that the victim's mother was charged in a separate proceeding with and pled guilty to conspiracy to commit capital rape. At the time of trial, she was serving a sentence of 10 years, with 7 years suspended and 5 years of supervised release upon serving the 3 years not suspended. (Tr. 242, 243, 256).

In *Burke v. State*, 576 So. 2d 1239 (Miss. 1991), the Mississippi Supreme Court summarized the concepts related to an accomplice/co-defendant instruction:[8]

This Court has embraced a principle that the granting of a cautionary instruction regarding the testimony of an accomplice witness is discretionary with the trial court . . . That discretion is not absolute, however; it may be abused.

---

[7]"This court will nevertheless consider [petitioner's] claims under the *Strickland* standard because the supreme court's decision finding [petitioner] failed to meet the standard set out in *Strickland* provided absolutely no explanation. In other words, because the supreme court's one-sentence decision gives this court nothing to examine to determine whether it was contrary to, or an unreasonable application, of the standards provided in *Strickland*, it is essentially useless to this court." *Palmer v. Scott*, 2010 WL 4962832, at *5, n.4 (N.D. Miss. 2010) (Report and Recommendation).

[8]The caution involves the notion that the testimony of an accomplice should be weighed with great caution and the jury is entitled to disbelieve an accomplice's testimony altogether if it is believed to be untrue, the jury being the sole judge of the credibility of the witnesses. *Burke*, 576 So. 2d at 1242 (addressing proposed jury instruction that was refused).

Where the state's evidence rests solely upon the testimony of an accomplice witness, this Court has said that the trial court errs in failing to give a cautionary instruction . . . Additionally, the Court has found abuse of discretion where there is some question as to the reasonableness and consistency of the testimony of the accomplice or the defendant's guilt is not clearly proven.

. . . [T]his Court [has] delineated a two-part test to determine whether a trial judge abused his discretion.  First, was the witness in fact an accomplice, and secondly, was his testimony without corroboration . . .

An accomplice for these purposes is a person who is implicated in the commission of the crime.  That is to say, that if the evidence admits a reasonable inference that the witness may have been a co-perpetrator or the sole perpetrator the cautionary instruction should be given . . .

The remaining question is whether there is sufficient corroboration to excuse the failure to give the instruction.  On close examination, this is but another way of inquiring whether the failure to grant the instruction is harmless.

*Id.* at 1242 (citations omitted).[9]

Even assuming the victim's mother could be characterized as an accomplice, the test stated above does not afford petitioner any relief because such an instruction does not apply to the facts of the case.  *See Harris v. Bingham*, 2007 WL 218437, at *3 (S.D. Miss. 2007) ("A jury instruction should not be given when the charge is not supported by the evidence, and due process does not require otherwise.") (citing *Hopper v. Evans*, 456 U.S. 605, 611 (1982)).  The State's case did not rest on the uncorroborated testimony of an accomplice.  There is more than sufficient corroboration; indeed, it is ample, both through the eyewitness testimony of the victim identifying petitioner as the sole perpetrator, *see generally* Tr. 261-269, and petitioner's own statement.

---

[9]In *Burke*, the proposed instruction dealt with testimony of an alleged look-out for the burglary of a dwelling and who came into possession of the stolen property.  Unlike the instant case, there was no corroboration of the testimony in *Burke.*

Petitioner's counsel's conduct falls within the wide range of reasonable professional assistance, and he was certainly not ineffective for not requesting this type of instruction. Further, petitioner has failed to show that the outcome of his trial would have been different, or that the result of his trial was fundamentally unfair or unreliable.  This ground is without merit.

(2) Failure to object to the introduction of Defendant's statement or file and argue a motion to suppress same

Petitioner argues that his trial counsel failed to object to the introduction of his statement or file and argue a motion to suppress same.  That statement, in petitioner's handwriting, reads, in pertinent part (and verbatim, except for the name of the victim):

> But later on [the victim] came forward and told me that her mother . . . did put her up to have sex with me and she said we did have sex together on all 3 occasion . . . Now this was told to me from [the victim] herself, and then [the victim] began to tell me more and more about everything that were happen to her and about her.  Yes [the victim] did amit that her mother did talk her into having sex with me, and [the victim] did also amit that me and her did have sex together, it were dark no light and am drugs up, so I really didn't know, but I do now.

The person who was present when this statement was given (Latasha Holmes) and the person who gave it (petitioner) both testified at trial.  Petitioner's counsel spent a significant amount of time challenging Holmes about the meaning of the statement and whether it even constituted an admission.  (Tr. 283-288).  Petitioner also provided an explanation for his statement and testified that he was confused while giving the statement due to taking medication for schizophrenia.  (Tr. 313-317).

"Whether the failure to move to suppress a confession establishes that counsel was deficient under prong one of the *Strickland* test turns on 'whether either a suppression motion or an objection would have been granted or sustained had it been made.'" *U.S. v. Hopkins*, 2008 WL 4534396, at *6 (E.D. La. 2008) (quoting *U.S. v. Oakley*, 827 F.2d 1023, 1025 (5th Cir.

1987)). Petitioner offers no real grounds for suppressing the statement, and no reasons why his counsel should have moved to do so. Holmes was properly allowed to testify as to what petitioner said in his statement, and a motion to suppress it would not have been granted or sustained had it been made.

In addition, petitioner has failed to establish the requisite *Strickland* prejudice resulting from his counsel's decision not to object to the statement's introduction into evidence or file a motion to suppress. In light of the overwhelming evidence introduced at trial–which included the testimony of the victim who identified petitioner as the perpetrator–petitioner cannot establish a reasonable probability that the result of his trial would have been different if the statement had not been introduced. Accordingly, this claim does not provide a basis for habeas relief.

(3) Failure to object to hearsay testimony of Patricia Bailey when child witness was available and actually did testify

This claim overlaps in some respects with ground three as to the confronting of witnesses, including Patricia Bailey. Bailey was an investigator (and a licensed master social worker) with the Mississippi Child Advocacy Center, which is designed to "offer children a child-friendly environment to disclose incidents of physical, sexual, and emotional abuse." (Tr. 162). Bailey conducted a forensic interview with the victim to help determine the validity of the claim that she had been raped by petitioner.

Under the Mississippi Rules of Evidence,

[a] statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that

13

when the child is unavailable as a witness, such statement may be admitted only if there
is corroborative evidence of the act.

Miss. R. Evid. 803(25).

While defense counsel successfully objected to certain testimony by Leon Seals on
hearsay grounds (Tr. 136-140),[10] no objection was made to Bailey's testimony regarding her
interview of the victim.[11]   In determining the admissibility of Bailey's testimony, two factual
determinations must be made: (1) that the alleged victim was a child of tender years; and (2) that
there is a substantial indicia of reliability of the testimony of the forensic interviewer.  *See*
*Derouen v. State*, 994 So. 2d 748, 751 (Miss. 2008) (involving an employee of the South
Mississippi Child Advocacy Center).  From Bailey's testimony, it is clear that the victim was 11
years old at the time of the interview.  (Tr. 174).  *Id.* (recognizing prior holding that there is a
rebuttable presumption that a child under the age of 12 is of tender years; once tender years
finding is made, then determination is made whether statement provides a substantial indicia of
reliability, and whether the child testifies at the trial).

Although this finding of substantial indicia of reliability was not made directly, the
underlying basis for such a finding was explored in Bailey's trial testimony:

Q.  All right.  In your training to do what you were doing at that time are you taught
things to look for in assessing the validity of the claim that is made by a child?

---

[10]Seals was the Commander in charge of Juvenile Services division of the Hinds County
Sheriff's Department.  This division investigates crimes against children.  He attended the
forensic interview conducted by Bailey.  The State attempted to elicit his testimony through M.
R. Evid. 803(4), which deals with statements for purposes of medical diagnosis or treatment.

[11]Trial counsel filed a separate pretrial Motion for Discovery aimed at "all records,
transcripts and recordings in the possession of the Mississippi Child Advocacy Center involving
the interviews and evaluations of [the victim, the victim's mother, and the mother's other two
children]."  (Tr. 8-9).

14

A. Yes, sir.

Q. What sort of things do you look for?

A. We look for the child using their own terminology to describe some things, you know, child terminology, terminology that cannot be misconstrued that maybe an adult has told them.

Q. Is that what we call like age appropriate terms?

A. Yes, sir.  Yes, sir.

Q. Well, in your experience with her was she using terms that she should or should not have been using in the context we are talking about?

A. She was using child appropriate terms, her own terminology in my opinion.

Q. All right.  What were some of the other things that you were taught to look for?

A. Contextual reporting, like she was able to say - - there was one time, and I mentioned this in the report that when she stated that Mr. Terrell told her to go to the woods, I intentionally in restating that misstated what she said to see if she would correct what I said, and she did.  I stated, Mr. Terrell told you to go into the shed in the woods.  She said, no, I didn't go to a shed.  I went into the woods.  We were trying to look for things like that.  And she remained consistent each time she told that story, she told it the same way.  She was able to give detailed accounts of Mr. Terrell's, what I would perceive as detailed accounts of Mr. Terrell's anatomy when she mentioned the scrotum area.  And also she was able to give contextual statements of what was going on around her when the abuse was occurring.  For instance, she was stating that her mother was in the truck and the siblings were in the truck.  And she never swayed from her statements.

Q. Were there any other things that you were taught that might apply to this situation about assessing validity?  For clinical purposes, I am talking about.

A. Well, we looked to see if there could be a motive as to why she would make the allegation.  You know, sometimes a child might be angry with a parent or have some other motive for making the allegation, and I didn't find that to be so in this case.

Q. Did she identify any other persons as having had sexual intercourse with her other than the defendant?

A. No, sir, she did not.

(Tr. 170-172).  Further, Investigator Seals was not in the same room as the interview, and

15

observed through a two-way mirror in an adjacent room.  (Tr. 135).  The interview was conducted in April 2003 (approximately 2 months after an alleged sexual encounter before Valentine's Day, 2003, Tr. 173-174) in a child-friendly environment.  (Tr. 165-167).  As already mentioned, the victim testified at trial.

Defense counsel conducted a thorough cross-examination of Bailey (Tr. 174-189), and pursued several theories with her surrounding his line of attack on the State's case, including the influence of the victim's mother and suggesting the identity of a different perpetrator of the crime.  This Court finds that petitioner's counsel exercised reasonable professional judgment by not challenging Bailey's testimony as hearsay.  Under the facts developed in the record, the trial court would have been well within its discretion in overruling a hearsay objection to Bailey's testimony.

Even if the testimony were hearsay, counsel's decision did not prejudice the defense and did not render the proceedings fundamentally unfair or unreliable.  The declarant (the victim) actually testified at trial and petitioner's counsel was able to cross-examine her.  (Tr. 270-275).  The outcome of the trial would not have been different even had Bailey's testimony been excluded.

(4) Failure to object to prejudicial vaginal photographs of victim

Photographs were admitted during the testimony of Dr. William Sorey, a pediatrician who examined the victim to determine evidence of sexual abuse.  (Tr. 194, 197).  He concluded that the victim suffered vaginal penetration.  (Tr. 198).  He took colposcopic photographs, which were introduced at trial to assist him in describing his findings.  (Tr. 199).

In *Sims v. State*, 512 So. 2d 1256 (Miss. 1987), the Mississippi Supreme Court stated: "It

16

has long been the position of this Court that photographs are admissible as evidence where they have 'probative value,' and where they are not so gruesome as to be overly prejudicial and inflammatory." *Id*. at 1258 (also recognizing that the particular photographs at issue–the injured face, head, and arm of a rape victim–"clarified, and were descriptive of, the testimony at trial describing [the victim's] injuries" and were admissible because they were not gruesome in nature).

Petitioner has failed to demonstrate a reasonable probability that in the absence of this photograph, there would have been a different result at trial.  In light of the overwhelming evidence of statutory rape presented against petitioner, he has not established that this photograph in any way prejudiced him.  This is especially true in that an important aspect of petitioner's defense was that someone else committed the rape, as opposed to denying the fact of the statutory rape itself.  The photograph did not implicate an assailant, only that a sexual act had been committed on the victim.  Accordingly, this claim for habeas relief has no merit and should be denied.

(5) Counsel failed to object to the testimony of criminal activity of petitioner other than that charged in the indictment

Petitioner offers nothing in support of this claim.  He does not identify the specific criminal activity to which counsel should have objected.  From a review of the record, the only direct reference to other crimes is found in the brief offered to the Mississippi Court of Appeals. What can be gleaned from it is the unsupported allegation that Seals, Bailey, the victim's mother, and the victim testified to the following non-charged criminal acts: kidnaping, assault, drug possession and drug distribution, and conspiracy to commit murder.  (Briefs and Other Pleadings volume, Brief of the Appellant at pp. 23-24).  It was clear that petitioner was on trial for

statutory rape, and statutory rape alone.  Indeed, the only evidence of previous crimes–that petitioner had been convicted twice before of sexual battery–never arose during the guilt phase of the trial, but only during sentencing.  (Tr. 370).  *See* M. R. Evid. 609 (impeachment by evidence of conviction of crime).

In reality, the testimony of Seals, Bailey, the victim, and the victim's mother described some of the circumstances of, and provided some context to, the relationship between petitioner, the victim, and her mother, and was in no way presented in the form of other crimes petitioner had committed.  This claim of ineffective assistance of counsel is baseless.

(6) Defense counsel failed to subpoena or call as a witness Cardell McClendon[12]

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003), *cert. denied sub nom. Graves v. Dretke*, 541 U.S. 1057 (2004) (quoting *Buckelew v. U.S.*, 575 F.2d 515, 521 (5th Cir. 1978)).  Thus, "[w]here the only evidence of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution."  *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).  In order to establish an ineffective assistance of counsel claim, petitioner must "overcome a strong presumption" that his attorney's decision in not calling these witnesses was a strategic one.  *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984); *see also Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)

---

[12]This individual, who was the victim's mother's boyfriend, and from whose house she moved when she and her children went to the abandoned house supplied by petitioner, is referred to in the record at times as McLaurin and at others as McClendon.  For the purposes of consistency, he will be referred to by the name reflected in the Petition.

("[F]ailure to present . . . evidence would not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.").  Moreover, in order to establish the requisite *Strickland* prejudice, petitioner is required to show not only that the testimony of the uncalled witnesses would have been favorable, but also that the witnesses were available and would have testified at trial.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Petitioner has not established that McClendon was available[13] and would have testified at trial.  The major thrust of the defense was that McClendon committed the acts of which petitioner was accused and on trial.  This was denied by the victim and the victim's mother, who witnessed petitioner having sex with her daughter.  Petitioner has not shown that McClendon's testimony would have been favorable to petitioner's defense, and petitioner's theory of McClendon's purported role was amply covered.

Petitioner cannot establish that his attorney was ineffective for failing to call this witness, as he has not demonstrated how or why his testimony would have been favorable to him.  This is simply not enough to meet petitioner's burden of establishing that the witness in question was favorable, or that his attorney's decision not to subpoena him was unreasonable.  Accordingly, this basis for habeas relief should be denied.

---

[13]On cross-examination, the following exchange occurred between Leon Seals and defense counsel (Tr. 159-160):

Q.  Okay.  All right.  Now be that as it may, either way, Cardell McClendon has never been found or questioned about this case by any law enforcement officer as far as his possible involvement with this child?

A.  Not that I know of.

(7) Counsel failed to call as a witness Lula Terrell

Lula Terrell is petitioner's mother.  She was listed in a pretrial notice of defense

witnesses and evidence which was the subject of a motion in limine and ruling thereon discussed

in more detail below.  With respect to Lula Terrell, the trial court left open petitioner's ability to

call her depending on how the evidence developed.  (Tr. 3-11).  However, defense counsel made

it clear that the only reason he would call her would be for impeachment purposes if the state

offered evidence that the victim and her family were imprisoned in the abandoned house

supplied by petitioner.  This was in light of defense counsel's view that

> the state's theory is that [petitioner] held the mother and children who are involved in this
> case imprisoned and against their will in an abandoned house in the Utica area and
> thereafter during that time period engaged in sexual intercourse with a minor child of that
> group.  Ms. Lula Terrell could testify that there were numerous occasions during this
> time period when the mother and the children came to her house, are at her house, used
> the telephone in her house, did not appear to be imprisoned or in anyway held against
> their will and kind of freely came and went there.  If the state puts on witnesses to testify
> that my client was holding them imprisoned incommunicado in this vacant house, then I
> think for impeachment purposes Mrs. Lula Terrell would be–should be allowed to testify
> and, technically, if that's not what they testify to, then she is not part of my case in chief.
> She is simply impeachment and I don't believe the Rules of Evidence even require me to
> provide witnesses to them.  But I have listed these names in an abundance of caution.

(Tr. 4-5).

While evidence about the circumstances of the living arrangements in the abandoned

house was touched upon, the imprisonment issue was not pursued, and petitioner was able to

explain the victim's family's ability to leave the house and, in fact, go to his mother's house.

The defense was able to explore inconsistent statements made by the victim's mother in order to

impeach her (Tr. 247-250), and the victim testified that petitioner was not at the house all the

time.  (Tr. 270-271).  The victim's mother admitted that she periodically went to petitioner's

mother's house to eat supper and use the phone when petitioner was not there.  (Tr. 252).

20

As with McClendon, not calling Lula Terrell as a witness was a reasonable exercise of professional judgment.  Even if her testimony was favorable, it was not critical in the outcome of the trial finding petitioner guilty of statutory rape.  This ground is without merit.

> (8) Defense counsel failed to provide timely reciprocal discovery which failure resulted in the exclusion of valuable exculpatory evidence

This issue is related to the testimony of Lula Terrell in that it also involves the pretrial notice of witnesses and evidence filed by defense counsel.[14]  However, as the Mississippi Court of Appeals stated in its review of the present petitioner's appeal, "[petitioner] frames this issue as a discovery question, but that is not accurate.  The circuit court did not exclude the witness testimony or the tapes on the basis of a discovery violation."  952 So. 2d at 1004.  The court of appeals went on to observe that petitioner

> argued that the witnesses were solely for the purpose of impeaching the State's assertion that [petitioner] held [the victim's mother] and her children against their will.  The State responded that it did not intend to rely on that assertion as the theory of its case.  The circuit court merely held that [petitioner] could not call the four impeachment witnesses unless the State presented evidence that [petitioner] held [the victim's mother] and her children against their will.  The circuit court also stated that it would reconsider the issue if the evidence developed otherwise.

---

[14]There were 7 witnesses identified, including detective Wardell Jackson (who was allowed to testify, and did so during the petitioner's case); Leon Seals, who also testified for the state; and Joseph Robinson of the Department of Human Services, who the trial court allowed to be called but was not.  Reference to Robinson is not made in the Petition.  In addition to Lula Terrell, the remaining witnesses were expected to testify as to any imprisonment evidence.  Lula Terrell was considered by defense counsel to be the only significant witness in this regard, and, although the trial court left open the option of calling any of these 4 witnesses, counsel's decision not to call her did not constitute ineffective assistance of counsel.

With respect to the audio recordings, petitioner's notice identified "[t]wo (2) cassette tape recordings during which the Defendant criticizes [the victim's mother] for using drugs in the presence of her children, for taking her children to crack houses, and for spending her welfare money for drugs.  On one of the tapes the Defendant directs [the victim] to tell her school teacher about her mother's friend Cardell trying to and/or having sex with [the victim]."  (Tr. 8).

21

As for the tapes, the circuit court never excluded them on the basis of a discovery violation.  Rather, the circuit court found that the tapes were irrelevant to the charge against [petitioner].  So, regarding both the witnesses and the tapes, these two issues are improperly termed as discovery issues when they could only be issues regarding exclusion of evidence.

*Id.*

This analysis is wholly supported by the record.  (Tr. 2-12).  There was no failure on defense counsel's part that resulted in the exclusion of exculpatory evidence because there was nothing exculpatory related to whether or not petitioner committed statutory rape.  There is no difference between the testimony of the other 3 witnesses and that of Lula Terrell, and the failure to call them was not ineffective.  The same conclusion applies to the audio tape: the victim's mother's credibility and the theory of McClendon as the person who committed the crimes were explored in detail without the necessity of the irrelevant recording.

(9) Defense counsel failed to argue the *Box*[15] guidelines or request a continuance during motion in limine.

This claim deals with the trial court allowing the state to call as a witness Latasha Holmes, a sheriff's department investigator who took petitioner's statement, despite the fact that Holmes's name was not contained in pretrial discovery provided by the state.  Defense counsel orally objected to the state calling her as a witness.

The state court of appeals discussed this issue as follows:

On the day of trial, [petitioner] moved to exclude the testimony of Latasha Holmes, the investigator present when [petitioner] gave a written statement. [Petitioner]

---

[15]*Box v. State*, 437 So. 2d 19 (Miss. 1983).  "Although the *Box* case first set forth the appropriate procedures and remedies for the trial court to consider in resolving discovery violations, that procedure is now reflected in Rule 9.04 of the Uniform Circuit and County Court Rules."  *Powell v. State*, 925 So. 2d 878, 881 (Miss. Ct. App. 2005) (citations omitted).  Rule 9.04 of the UCCCR is entitled "Discovery."

claimed that the State failed to provide notice of Holmes as a witness during reciprocal discovery.  The circuit court overruled [petitioner's] motion to exclude Holmes as a witness . . .

> The State is obligated to disclose to a defendant's attorney, names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statement made by any such witness.  URCCC 9.04(A)(1).  If at any time prior to trial it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.  URCCC 9.04(I).  The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in a manifest injustice.

952 So. 2d at 1006-07.  Prior to pointing out the failure to request a continuance, which is required if there is a belief that the lack of opportunity to prepare to meet the evidence results in prejudice, *id.* at 1007, the court of appeals concluded:

> We cannot find that the circuit court abused its discretion when it overruled [petitioner's] ore tenus motion in limine.  For one, the record shows that Holmes's involvement was identified during a preliminary hearing.  During that preliminary hearing, Captain Seals mentioned that another investigator took [petitioner's] statement.  True enough, Captain Seals did not name Holmes, but [petitioner] was made aware of an additional investigator.  What is more, the record shows that the State asked Holmes to visit [petitioner's] attorney the day before trial, and that [petitioner's] attorney briefly spoke with Holmes.  Additionally, Holmes merely testified to matters within [petitioner's] written statement which [petitioner was aware of and possessed a copy].

*Id.*

From both an admissibility standpoint and a consideration of a claim of ineffective assistance of counsel, petitioner cannot establish prejudice.  He does not assert that he was unaware of Holmes's involvement before trial.[16]  After arguing for her exclusion as a witness,

---

[16]The following testimony was elicited from Leon Seals during trial:
  Q.  Once you had read him his Miranda rights was he willing to talk?
  A.  Yes.  An interview was done.  But, however, during the interview [petitioner]

defense counsel vigorously cross-examined Holmes.  (Tr. 283-288).  He did so because the

motion in limine that he urged upon the trial court was overruled, which ruling by its very nature

took into account the UCCCR 9.04 factors.  Therefore, requesting a continuance would have

made no difference.  Counsel's efforts and decisions on this issue were not ineffective.

> (10) Defense counsel failed to properly cross examine Leon Seals, and by doing so
> opened the door for hearsay testimony which excluded Cardell McClendon as a suspect

Petitioner criticizes his trial counsel's failure to properly cross examine Leon Seals, the

Commander of the Juvenile Services Division of the Hinds County Sheriff's Department.  "It is

clear that '[t]he decision whether to cross-examine a witness, and if so, how vigorously to

challenge the witnesses' testimony, requires a quintessential exercise of professional judgment."

*Thang Lai v. Cain*, 2009 WL 324059, at *11 (E.D. La. 2009) (adopting Report &

Recommendations and dismissing habeas petition with prejudice) (quoting *Ford v. Cockrell*, 315

F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd sub nom. Ford v. Dretke*, 135 Fed. Appx. 769 (5th

Cir.2005).

Petitioner cannot establish that his counsel's cross-examination of this witness

constituted a deficiency.  Moreover, petitioner has failed to identify any prejudice that resulted

---

seemed to have a better rapport with another investigator, Investigator Holmes.  I was present when the interview started, but I walked out of the room because his rapport with Investigator Holmes was more prevalent than mine.
Q.  Okay.  So why exactly did you leave the room when you thought her rapport was better?  What was the purpose behind you leaving?
 A.  I left the room because he seemed to want to talk to–whenever you arrest any person, whoever they are, when you have two or more investigators the subject or suspects will normally want to talk to just one person.  And during this incident his rapport was better with the other investigator than myself.
Q.  That other investigator was whom again?
A.  Investigator Holmes.
(Tr. 144-45).

from his attorney's decision to cross-examine the above-mentioned witness in the manner in which he did, other than to state that the cross-examination opened the door for hearsay testimony which excluded Cardell McClendon as a suspect.  McClendon was not being tried, but was certainly the target of the defense as not only a suspect, but the actual person who committed the statutory rape.  Defense counsel's questioning of Seals about a police investigation of McClendon certainly did not "almost entirely void[] the [petitioner's] defense at trial that another person had committed these acts."  Brief of Appellant at p. 27.[17]

In light of the significant evidence presented at trial of petitioner's guilt, petitioner has failed to establish a reasonable probability that the outcome of his trial would have been different had this witness been cross-examined in a different manner.  Accordingly, this claim provides no basis for habeas relief and should be denied.

**Ground Three–Confront witnesses**

This ground is inartfully worded.  Although petitioner complains of some specific matters in this ground, the title is general.  Petitioner appears to be complaining, *inter alia*, that he was not able to confront all witnesses in violation of the confrontation clause of the United States Constitution.  U.S. Const. amend. VI.  The United States Supreme Court's opinion in *Crawford v. Washington*, 541 U.S. 36 (2004), outlines the essential concepts involved in analyzing such challenges.

---

[17]Trial counsel filed a second Motion for Discovery seeking "any evidence that would prove that other persons had engaged in sexual intercourse with the alleged victim in this case." (Tr. 33).

In *Crawford*, the Supreme Court clarified that testimonial statements[18] are not admissible against a criminal defendant unless the witness is unavailable and defendant has had a prior opportunity to cross examine the witness.[19]  541 U.S. at 58, 68-69.  However, the Court emphasized:

> Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of his prior testimonial statements. It is therefore irrelevant that the reliability of some out-of-court statements cannot be replicated, even if the declarant testifies to the same matters in court.  The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.  (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.)

*Id*. at 59 n.9 (internal quotations and citations omitted).  *See, e.g., Smith v. State*, 25 So. 3d 264, 270 (Miss. 2009) ("In other words, the analysis of whether prior testimonial statements must be excluded under the *Crawford* rule is necessary only when a witness does not appear for cross-examination at trial.").

In the instant case, petitioner was not denied his right to confront witnesses.  Presumably, he challenges the testimony of Patricia Bailey, the investigator with the Mississippi Child Advocacy Center, regarding statements made by the victim as well as any reference to the statement by the investigator who observed the statement.[20]  However, the victim testified at trial and petitioner was able to cross examine her and all other witnesses who appeared and testified

---

[18]Although the court declined to provide a comprehensive definition of "testimonial," it held that at a minimum, it would include prior testimony at a preliminary hearing, before a grand jury and at a former trial, as well as to police interrogations.  541 U.S. at 68.

[19]Before *Crawford*, testimonial out-of-court statements could be presented to the jury if the court deemed them reliable, as set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980).

[20]As mentioned *supra* at pp. 13-14 and accompanying n.10, the trial court did not allow certain testimony by Leon Seals, the commander of the Juvenile Services division of the Hinds County Sheriff's Department who attended the interview conducted by Bailey.

26

at trial.  Petitioner's sixth amendments rights were not violated.

As for the other items mentioned in this ground, this Court has discussed in detail petitioner's claims involving the admission and exclusion of testimony, as well as his counsel's performance.  Petitioner has failed to establish that any of the testimony discussed above, whether admitted or excluded, was improper or prejudicial, such that constitutional grounds are implicated.  In addition, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999), *reh'g & reh'g en banc denied*, 184 F.3d 820 (1999) (citation omitted).  Further, the "erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999) (citations omitted).  Put differently, "the mere erroneous admission of prejudicial testimony does not, in itself, justify federal habeas relief unless it is material in the sense of a crucial, critical, highly significant factor, in the context of the entire trial." *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) (internal citations and quotations omitted).

Petitioner has failed to make these showings.  Particularly when viewed in light of the overwhelming evidence introduced against petitioner at trial, petitioner has not established that the testimony was "material" to the outcome of his trial.  Petitioner has failed to establish that the testimony discussed above, even if prejudicial, rendered his trial fundamentally unfair, or that it played a highly significant role in the jury's determination.  Accordingly, this claim for habeas relief should be denied.

**Ground Four–Due process; trial court's rulings denied petitioner constitutional guarantees to due process, fair trial, and call witnesses**

As with ground three, petitioner's claims involving the admission or exclusion of evidence fail to establish that the evidence, whether admitted or excluded, was improper or prejudicial.   As already mentioned, "[a] state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair."  *Johnson v. Puckett*, 176 F.3d at 820.  Petitioner has failed to establish either of these standards in the admission or exclusion of evidence.  Accordingly, this ground does not provide a basis for habeas relief and should be denied.

**Ground Five–Verdict of jury contrary to law and against the overwhelming weight of evidence; petitioner is innocent of crime of statutory rape and would have been found not guilty but for errors committed in trial court**

Petitioner argues that the verdict was against the overwhelming weight of the evidence.  A challenge to the "weight" of the evidence is not a constitutional claim, and thus is not a ground for habeas relief.  *See Griffin v. Kelly*, 2007 WL 2344955, at *5 (S.D. Miss. 2007) (Report and Recommendation) (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)); *Vaughn v. King*, 2007 WL 2012297, at *3 (N.D. Miss. 2007) (*citing Young*, 760 F.2d at 1105).  Accordingly, petitioner is not entitled to habeas relief on his challenge to the weight of the evidence.  However, although not explicitly raised by petitioner, out of an abundance of caution this Court will liberally construe Ground Five to raise a claim regarding the sufficiency of the evidence, as well as a claim that he is innocent of the charges for which he was convicted and that the cumulative effect of the errors asserted at trial violated his constitutional rights.

Insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the state, is such that no "rational trier of fact could

28

have found the essential elements of the crime beyond a reasonable doubt." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Dupuy v. Cain*, 201 F.3d 582, 589 (5th Cir. 2000).[21]  This standard of review allows the trier of fact to find the evidence sufficient to support a conviction, even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citation omitted).  Thus, it "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983).  "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury . . . ". *Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir. 1992) (quoting *Gibralter Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1297 (5th Cir. 1988)).

Moreover, the determination of the sufficiency of the evidence by a state appellate court is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference.") (citing *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985)); *Gibson v. Collins*, 947 F.2d 780, 782 (5th Cir. 1991) (stating that on habeas review, federal court must "give great weight to the state court's determination") (citing *Porretto v. Stalder,* 834 F.2d 461, 467 (5th Cir. 1987)).

---

[21]This standard of review is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Dupuy*, 201 F.3d at 589 (quoting *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979)).  Petitioner was convicted under Miss. Code Ann. § 97-3-65(1)(b), which provides that a person is guilty of statutory rape if as an adult he engages in sexual intercourse with a child under the age of fourteen years and who is twenty-four or more months younger than the perpetrator.

The testimony and evidence presented at trial were discussed in great detail by the Court of Appeals.  They need not be repeated here.  Petitioner has presented this Court with nothing in his Petition that would overcome the deference this Court must afford to the state court's decision.  Nor is the Court, upon its independent review of the record, able to conclude that the evidence, when viewed in the light most favorable to the state, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Santellan v. Cockrell*, 271 F.3d at 193 (internal citation and citation omitted).  Accordingly, habeas relief on this ground must be denied.

Furthermore, petitioner's claim of being innocent of the charges is not cognizable on habeas review.  "[I]n state criminal proceedings the trial is the paramount event for determining the guilt or innocence of the defendant."  *Herrera v. Collins*, 506 U.S. 390, 416 (1993).  Thus, "[c]laims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Id* at 400.  This rule is based on the principle that "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution–not to correct errors of fact."  *Id*.  "'[A]ctual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  *Id*. at 404; *see also Moore v. Quarterman*, 534 F.3d 454, 465 n.19 (5th Cir. 2008) ("[A] claim of actual innocence . . . fails to state a claim in federal habeas corpus") (quoting *Lucas v. Johnson*, 132 F.3d 1069, 1074 (5th Cir. 1998)).

Finally, cumulative error is a basis for habeas relief only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the

errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citations omitted).  In evaluating the sufficiency of a cumulative error allegation, meritless claims or those that are not prejudicial cannot be cumulated, no matter how many total "errors" are raised.  *Id*. (citation omitted).  As the claims raised in the instant petition lack merit, petitioner's claim of cumulative error does not provide a basis for habeas relief.

**<u>Miscellaneous</u>**

Petitioner has filed several documents (docket entries  [12] [13] [14]) that are shown as motions for additional discovery.  They serve no purpose other than to expand upon (and mostly go well outside) the claims raised in his Petition.  For example, he continues his assault upon the indictment, particularly the fact that it does not contain specific dates of the crimes, but rather a range of time in which the crimes were committed.  This is of no avail, since the indictment contains all its necessary elements.  The Mississippi Court of Appeals has recognized that "in cases involving sexual abuse of a child a specific date is not required so long as the defendant is fully and fairly advised of the charge against him." *Gordon v. State*, 977 So. 2d 420, 430 (Miss. Ct. App. 2008) (citations and internal quotations omitted).  *See also Baker v. State*, 930 So. 2d 399, 404-07 (Miss. Ct. App. 2005).

Petitioner even suggests that he was subjected to double jeopardy by being tried twice for the same crime.  The record clearly shows that petitioner was indicted, tried, and convicted of two separate incidents of statutory rape.

Petitioner maintains that the state failed to prove that the victim suffered trauma as a result of the sexual assault.  However, the victim's physical condition was established through

the testimony of Dr. Sorey (and the photos to which petitioner claims his counsel should have objected).  Furthermore, there was no need for petitioner to have a medical witness testify on his behalf in this regard.

Petitioner also attempts to describe his depression as insanity or as affecting his frame of mind.

> Statutory rape . . . constitutes a strict liability criminal offense existing in statute as a modification of the common law criminal intent requirement . . . Statutory rape provides criminal liability based upon carnal knowledge with a person below a particular age set forth by statute, without regard to criminal intent or knowledge of such age . . . A lack of an intent element does not render a statute unconstitutional.

*Lenard v. State*, 51 So. 3d 239, 245 n.4 (Miss. Ct. App. 2011).  There is absolutely no evidence supporting an insanity defense or that petitioner was otherwise incapable of committing the crimes or not competent to stand trial.

Finally, petitioner makes reference to the state's failure to conduct or request DNA testing,[22] but cites nothing in support of this theory.  The record does not establish the need for DNA testing, or that there was any evidence to test.

In sum, the state court trial proceedings were fundamentally fair and reliable.  The trial court's decisions did not prejudice the defense, and trial counsel's performance was not ineffective.  Petitioner has not shown a deprivation of his constitutional rights.

## **RECOMMENDATION**

For the reasons stated above, it is the recommendation of this Court that the relief sought in John B. Terrell's [1] Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 be denied

---

[22]This Court's understanding of this argument is that such DNA testing would presumably establish his innocence.

and that the Petition be dismissed with prejudice.

## **NOTICE OF RIGHT TO OBJECT**

In accordance with the rules, any party within fourteen (14) days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject, or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  28 U.S.C. § 636(b)(1); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).[23]

THIS the 8th day of July, 2011.

s/Michael T. Parker
United States Magistrate Judge

---

[23]*Douglass* referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.